168 P.2d 851

DAVIS v. SAVAGE et al.

No. 4905.

Supreme Court of New Mexico.

April 10, 1946.

Frazier & Quantius, of Roswell, for appellant and cross-appellee.

George L. Reese, Sr., of Roswell, for appellees and cross-appellants.

BICKLEY, Justice.

This is an action in ejectment commenced by plaintiff (appellant) against Mrs. Joan C. Waugh, and continued after her death against her personal representative, Margaret Savage, and Margaret Savage, individually; Melvine N. Robertson, Myrtle F. Stuchal and Peter Charles Viering, sole heirs of Mrs. Waugh, as substituted defendants (appellees and cross-appellants).

The defendants traversed the allegations of the plaintiff's complaint, and cross-complained, seeking to quiet title in them to the land involved.

The District Court concluded that the defendants' cross-complaint that they were the owners of the land, was without foundation, but concluded that defendants, through their predecessor in title, Mrs. J. C. Waugh, were mortgagees in possession of the real estate involved, and concluded as a matter of law that the plaintiff had no right to the possession of the premises, and gave the plaintiff thirty days from the 15th of December, 1944, in which to elect to pay the remainder due on mortgage given to Mrs. J. C. Waugh, deceased, within said thirty days, and in the event the plaintiff did not so elect to pay said amount, judgment should go for the defendants; and the plaintiff, through her attorney, having announced in open court that she declined to pay said amount, the court rendered judgment against plaintiff and in favor of defendants, in the ejectment action, and further adjudged that the cross-complaint of the defendants seeking to quiet title in them be dismissed.

Plaintiff appealed and defendants appealed from that part of the judgment dismissing defendants' cross-complaint to quiet title in the defendants.

The litigation arose out of the execution of senior and junior mortgages.

On December 13, 1921, Dan C. Savage and Margaret Savage, his wife, executed and delivered to Mrs. J. C. Waugh, their real estate mortgage deed to secure a promissory note in the amount of $1,700, bearing date November 28, 1921, and due and payable one year after date, and bearing interest at 8% per annum from date, said mortgage deed containing the familiar power of sale provision.

On November 22, 1929, the said Dan C. Savage and Margaret Savage executed what has been referred to by the parties as a *renewal* note and mortgage for $1,700 due one year after date and bearing 8% interest from date.

No payments were ever made upon the November 28, 1921 note except payments aggregating about $400, so that it appears from a little calculation that when the November 22, 1929 so-called renewal note was given, it was not for the amount due on the old note, lacking approximately $800 thereof. So far as the language of the 1929 note and mortgage is concerned, there is nothing to indicate that they are not new contracts.

On April 1, 1934, the said Dan C. Savage and Margaret Savage executed and delivered to C. H. Davis their promissory note and mortgage deed securing the same, for the principal sum of $930, bearing interest at the rate of 10% per annum until paid, due on or before the first day of April, 1936, and mortgaging the identical properties described in the mortgages to Mrs. J. C. Waugh, heretofore referred to.

These mortgages will hereafter be referred to as the 1921 Waugh mortgage, 1929 Waugh mortgage and the Davis mortgage.

The Davis mortgage contained the following recital: "This mortgage is given subject to two prior mortgages as follows: One mortgage to Mrs. J. C. Waugh, dated December 13th, 1921; for $1700.00. One mortgage to Mrs. J. C. Waugh, dated November 22nd. 1929, for $1700.00."

Nothing was paid on the Davis note except small sums on the interest due thereon. The Davis mortgage also contained a power of sale provision.

C. H. Davis died intestate prior to the commencement of this litigation, and his widow, Nina E. Davis, was appointed administratrix of his estate, and thereafter on the 22d of October, 1941, instituted a suit in the district court against Mrs. J. C. Waugh, Margaret Savage, et al., to foreclose the Davis mortgage. In this action, Margaret Savage filed her separate answer and Mrs. J. C. Waugh appeared in said cause by answer and cross-complaint seeking to foreclose her purported mortgage on the property, but subsequently filed a motion to dismiss her cross-complaint and filed her first amended answer, which was granted, and her amended answer was filed, to which a demurrer was interposed, and subsequently on the motion of the plaintiff in the action here for review, the defendant,

Mrs. J. C. Waugh, was dismissed as a party defendant. Thereafter, and on March 23, 1942, Mrs. Waugh filed a petition of intervention in the Davis foreclosure suit to which a demurrer was filed. On May 19, 1942, Mrs. Waugh moved the court to dismiss her petition of intervention without prejudice, and on May 19, 1942, an order was entered by the court allowing the petition to be dismissed without prejudice, and thereafter the cause proceeded to final decree as to the other defendants and the Davis mortgage was foreclosed by said decree and such proceedings were had that the property was bought in at the special master's sale by the plaintiff in the cause here for review, Nina E. Davis.

Nothing was done by Mrs. J. C. Waugh to foreclose her mortgages prior to the Davis foreclosure proceeding.

On May 18, 1942, Mrs. J. C. Waugh, by her attorney G. L. Reese, Sr., under the power of sale contained in the 1921 Waugh mortgage, issued a notice of sale of the property involved herein, stating among other things that on June 24, 1942, the real property described in the notice would be sold at public auction to the highest bidder for cash for the purpose of applying the proceeds of such sale to the satisfaction of the indebtedness evidenced by the 1921 Waugh mortgage note. The trial court found that on the 24th of June, 1942, the real property involved was sold pursuant

to said notice of sale and bid in by Mrs. J. C. Waugh, for the sum of $3,000, said sale being made by her attorney G. L. Reese, Sr., for her, she being absent at such sale, and that a deed was issued by said attorney to the said Mrs. J. C. Waugh on the 25th day of June, 1942, and filed for record on June 29, 1942.

The trial court found that Mrs. J. C. Waugh, through her attorney, took possession of the real estate involved herein on the 20th day of May, 1942, by the service of a written notice upon Margaret Savage, who had theretofore been looking after said real estate and the rentals thereof; that Margaret Savage made no objection to the taking of possession of said premises by the said Mrs. J. C. Waugh; and that since said date, the said Mrs. J. C. Waugh had possession of said premises until her death on the 13th day of May, 1943, and that since the appointment of Margaret Savage as administratrix of the estate of Mrs. J. C. Waugh, she has had charge and possession of said real estate, and that the said Margaret Savage as administratrix for herself and the other heirs of the said Mrs. J. C. Waugh, deceased, is claiming possession by virtue of the sale and deed above mentioned.

We will first consider the appeal of the cross-appellants. They assign errors as follows:

(1) The court erred in its conclusion of law No. 1 appearing at Tr.R. 88 as follows: "That at the time of the purported sale on May 18, 1942, by Mrs. J. C. Waugh, under the 1921 mortgage, the right of action on said mortgage as well as the power of sale therein contained was barred by our statutes and such sale was a nullity."

(2) The district court erred in its conclusion of law No. 4 appearing at page 88 Tr.R. as follows: "The claim of the defendant that she is the owner in fee simple of the real estate in this action is without foundation and should be denied."

(3) The district court erred in dismissing the cross-complaint of the defendants to quiet title as shown by the final judgment of the court at page 128 Tr.R. as follows: "The cross-complaint of the defendants seeking to quiet title is dismissed. Defendants except."

The District Court doubtless based its decision complained of upon Ch. 10, Laws 1927, 1941 Comp. 27-119, as follows:

"Section 1. No lands, tenements, hereditaments, goods or chattels shall be sold under any power of sale contained in any mortgage, deed of trust or other written instrument of like effect, where an action or suit upon the indebtedness secured thereby is barred by the provisions of Chapter 68, New Mexico Code of 1915.

"Sec. 2. This Act shall not in any wise affect, limit or impair any right any person may now have to exercise a power of sale contained in any such mortgage, deed of trust or other written instrument of like effect, provided such right be exercised within two years after the date of the passage and approval of this Act."

And Ch. 139, Laws 1929, 1941 Comp. 63-407, as follows:

"Section 1. No real property or any interest therein shall be sold under or by virtue of any power of sale contained in any mortgage, mortgage deed, trust deed or any other written instrument having the effect of a mortgage, which shall have been executed subsequent to the time this Act shall go into effect.

"Sec. 2. All acts or parts of acts in conflict herewith be and the same are hereby repealed."

And the court doubtless had in mind also the six-year limitation applicable to actions filed on written instruments. 1941 Comp. 27-103.

Effort is made by cross-appellants to convince us that Ch. 10, Laws 1927, was repealed by Ch. 139, Laws 1929, and therefore has no application to the case at bar. The argument is that since the later enactment in section 2 thereof repealed "all acts or parts of acts in conflict herewith" and as they assert, the 1927 act was in conflict with the 1929 act, the earlier act is repealed by implication. We do not agree. In the first place, Ch. 10, Laws 1927, dealt with sales of "goods or chattels" as well as with lands under power of sale. Secondly, it dealt only with the period of time within which such power of sale provisions could be exercised and did not purport to prohibit the exercise of power of sale, whereas Ch. 139, Laws 1929, *prohibits* sale of *real property* by virtue of power of sale contained in mortgages "which shall have been executed subsequent to the time this Act shall go into effect." And this is so, apparently, whether the indebtedness secured by such real estate mortgage containing power of sale is barred by the statute of limitations or not.

Cross-appellants think Ch. 149, Laws 1931, 1941 Comp. 21-220, evidences a legislative understanding that Ch. 10, Laws 1927, had been repealed because it was therein provided that real property sold by virtue of a power of sale contained in a mortgage, could be redeemed by the mortgagor, etc., under conditions specified, within the twelve months after the date of sale. We do not think this lends any support to the argument of cross-appellants because it was merely a re-enactment of the substance of a portion of section 117-119 of the 1929 New Mexico Statutes Annotated, which had originally appeared in Laws 1889, Chapter 51, the only material difference being that the rate of interest was

reduced from 12% provided in the 1889 Act to 10% in the 1931 Act. Furthermore, the 1931 Legislature could reasonably have assumed that after the enactment of Ch. 10, Laws 1927, there might still be existing mortgages containing powers of sale which would have vitality in 1931 and thereafter, because the indebtedness secured thereby had *not* been barred by the statute of limitations.

■ It is a cardinal rule that repeals by implication are not favored and we deem it unnecessary to cite authorities. See Rader v. Rhodes, 48 N.M. 511, 153 P.2d 516, discussing repeals by implication.

For what it may be worth, we may say in passing that Ch. 10, Laws 1927, was carried forward into the New Mexico Statutes Annotated 1929 Compilation, and also into the 1941 Compilation, and that as late as the 1945 cumulative pocket part to the 1941 Compilation at page 91, the compilers refer to Sec. 27-119, Ch. 10, Laws 1927, in a cross-reference to Sec. 63-407, Ch. 139, Laws 1929.

We hold that this contention of cross-appellants is without merit.

■ Cross-appellants next urge that as to them, if not repealed, Ch. 10, Laws 1927, was unconstitutional and void as impairing the obligation of the contract made Dec. 13, 1921, which was the mortgage containing the power of sale which was sought to be exercised by proceedings thereunder, commencing with the notice of sale dated May 18, 1942, culminating in deed executed June 26, 1942. To maintain this position, cross-appellants are compelled to assert that this remedy of enforcing their security is a substantive right as distinguished from a remedy. They are also obliged to assert that although it has been firmly established that statutes of limitations governing court actions to enforce rights may be retroactively shortened, provided a reasonable time is afforded in the curtailing statute in which to assert the right, this power of sale being contractual could not be regulated by the Legislature, so that where no time limit for its exercise existed at the time of making the contract, it could not be modified so that this unspecified time could be limited so as to conform to the period allowed to foreclose mortgages by action or suit. In Section 2 of Ch. 10, Laws 1927, is what is commonly called a saving clause preserving the right to exercise a power of sale contained in a mortgage, provided such right be exercised within two years after the date of the passage and approval of the act, which was March 2, 1927. This would seem to be a reasonable and sufficient time after the passage of the act in which the mortgagee could move. It is possible to imagine some circumstances in which it might work out so that not much time would be left between the two years after the passage of

the act and the expiration of the time to foreclose the mortgage by court action. But however that may be, no hardship was visited by this act upon the cross-appellants' predecessor, Mrs. J. C. Waugh, or upon cross-appellants. As we have seen, the 1921 mortgage here in question was executed December 13, 1921, to secure a note dated November 28, 1921, due one year after date, so that action on the note became barred on November 28, 1928. The mortgagee, Mrs. Waugh, was charged with knowledge of the statute, so she had almost a year and nine months after the passage of the act in which to exercise the power of sale before the bar of the statute would fall athwart her privilege of commencing an action or suit upon the indebtedness over four years past due when Ch. 10, Laws 1927, was enacted.

■ We do not think cross-appellants are in a very good position to urge this proposition. It is to be noted that Mrs. Waugh permitted the November 28, 1921 mortgage note to become barred by the six-year statute of limitations on November 28, 1928. And perhaps sensing the infirmities of the power of sale under the circumstances, she on Nov. 22, 1929, procured to be executed by Dan C. Savage and Margaret Savage a new note for $1,700, and on the same day procured the execution of a new mortgage on the identical real estate described in the December 13, 1921 mortgage. These later instruments have been referred to by the parties and by the trial court as a renewal note and mortgage. The word "renewal" has varying significations. It is said in the 4th Edition of Wood on Limitations in a note to section 86: "The renewal of a debt barred by limitation is a new contract; the consideration for the new promise is the old debt, and is sufficient." Citing Interstate Building & Loan Association v. Goforth, 94 Tex. 259, 59 S.W. 871; Poindexter v. Rawlings, 106 Tenn. 97, 59 S.W. 766, 82 Am.St.Rep. 869; Bowman v. Rector, Tenn. Ch.App., 59 S.W. 389. The 1929 mortgage was executed with all of the formalities of the old one, acknowledged and placed of record. Although the old debt had been barred nearly a year, the maturity date of the new note was one year after the date thereof. It has none of the aspects of a mere admission in writing that the 1921 note was unpaid. It is not a promise to pay the old note. The new note promised to pay $1,700, the same amount as the principal sum mentioned in the old note, but it does not promise to pay the unpaid interest which had accumulated (about $800) on the old note, but promises to pay "Seventeen Hundred Dollars with interest at the rate of 8% per annum, from date until paid." It may have been in a sense a renewal note in that the old unpaid note would be a supporting consideration for the new note, but it did not

purport to be an extension of the old note and mortgage. The note and mortgage dated November 22, 1929, were new contracts for the purpose of considering the bearing of Ch. 10, Laws 1927, and Ch. 139, Laws 1929, thereon.

In considering the revival of causes of action upon the indebtedness by acknowledgment that the debt is unpaid, or the promise to pay the same, it is generally regarded as immaterial whether the acknowledgment precedes or follows the bar. But there is a distinction as to the effect upon the remedy. In Wood on Limitations, 4th Ed., section 81, it is said: "The distinction between the acknowledgment of a debt before and one after the statute has run consists merely in its effect upon the debt and the remedy. An acknowledgment or promise made before the statute has run, vitalizes the old debt for another statutory period dating from the time of the acknowledgment or promise, while an acknowledgment made after the statute has run gives a new cause of action, for which the old debt is a consideration."

And in Note 6 to this section, Wood says: "A promise to pay a debt after it is barred constitutes a new cause of action, and suit must be brought upon the promise and not the original debt." Citing Bain v. Sawyers, 14 Ky.Law Rep. 857; Rodgers v. Byers, 127 Cal. 528, 60 P. 42.

Wood on Limitation, 4th Ed., Section 230, says: "So long as the debt which a mortgage is given to secure is kept on foot, the mortgage lien remains in full force. Therefore, any acknowledgment or promise of the debtor sufficient to prevent the statute from running against the debt, equally prevents the statute from running upon the mortgage; and, as we have seen, such also is the effect of a part payment, either of principal or interest made upon the mortgage. But where the rights of subsequent mortgagees intervene, or where the mortgagor has sold the premises, an acknowledgment or payment afterwards, made by the mortgagor after the statute bar has become complete, does not revive the mortgage so as to defeat any of the rights of such subsequent mortgagee or grantee. But so far as his own interests are concerned, he may revive the mortgage by such acts, but not so as to impair or defeat the rights of other parties who, previous to such acts, acquired an interest in the premises."

It seems to us that upon the same reasoning, it is proper to hold that where the interests of the public have intervened, as manifested by a statutory declaration of public policy, and it would be improper to allow a revivor which is not contrary to law as to the indebtedness to serve the purpose to revive the mortgage and give life to the power of sale therein, so as to defeat the public policy of the State, which

had become manifest previous to such acts of revival or of attempted revival, even if it could be said that the old debt had been revived.

Mortgages conferring power of sale have been recognized in New Mexico at least since 1889 when the legislature regulated the matter of redemption from sale thereunder. See 1941 Comp. 21-220. However, such powers have been looked upon with varying degrees of favor and disfavor. The right to exercise power of sale provisions has been withdrawn in a number of states. See Patton on Titles, Sec. 234, citing code provisions and decisions of Arizona, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas and Oregon. As we have seen, the right to exercise such power was withdrawn partially by Ch. 10, Laws 1927, and completely by Ch. 139, Laws 1929, as to mortgages executed subsequent to the effective date of that act.

. In Baca v. Chavez, 32 N.M. 210, 252 P. 987, 989, decided January 15, 1927, we held that execution of power of sale in mortgage was not barred by limitation barring suit or action on the debt or security. In the course of the opinion, we said: "It is urged, not without reason, that the same policy served by refusing the aid of the courts, after the debtor has sat by for the statutory time, would be served by barring execution of a power of sale. It is said, also not without force, that the result

we arrive at serves in such a case as this to defeat the policy of the statute. But these considerations are for the lawmakers."

It did not take the law makers long to announce their distaste for the interpretation we had been compelled to announce— less than two months. See Ch. 10, Laws 1927. The reason for the legislative action is none of our concern, but we are disposed to agree with the observation of the North Dakota Supreme Court in Scott v. District Court of Fifth Judicial District, 15 N.D. 259, 107 N.W. 61, 64, that: "The object of limitation laws is to prevent agitation of stale demands when, by reason of lapse of time, evidence by which to establish the cause of action or defense may be lost or difficult to procure. The reason for such laws is just as applicable to a mortgage containing a power of sale as to any other."

The mortgagor might desire to enjoin the exercise of the power of sale on the ground that he had valid defenses to the claim of indebtedness or otherwise, and perhaps could do so, in a proper case. But the same elements which would put him at a disadvantage, because the demand was stale, in an action to foreclose the mortgage in court, would militate against him if he sought to enjoin the execution of the power of sale. So we think the action of the 1927 Legislature to limit the exercise

of powers of sales in mortgages to the same period that the mortgage could be foreclosed by suit or action finds a great deal of support in reason and precedent.

Statutes rendering the Statute of Limitations available as a bar to the exercise of the power to foreclose have been held not to impair the rights of the mortgagee under pre-existing contracts. We find it convenient to quote from "Annotation—Constitutional provision against impairment of obligation as applied to rights or remedies of mortgagee." 79 L.Ed. 303, at page 307, as follows:

"In Graves v. Howard, 1912, 159 N.C. 594, 75 S.E. 998, Ann.Cas.1914C, 565, an act of the legislature declaring that the power of sale in a mortgage shall be inoperative when the right to bring action to foreclose is barred by the Statute of Limitations was held not unconstitutional as impairing the obligation of the contract when applied to mortgages in existence at the time the statute went into effect, as the change affected only an existing remedy, and a reasonable time was given for the exercise of the power before the statute worked a bar, the right to sell under the power not expiring under the statute for more than five years after its enactment, which was an ample protection of the rights of the parties.

"In Scott v. District Ct., 1906, 15 N.D. 259, 107 N.W. 61, a statute in effect subjecting the mortgagee's right to exercise the power of sale to the right of the mortgagor forever to prevent that method of foreclosure, so as to enable the latter to plead and prove, in an action to foreclose, any defense or counterclaim he may have, the intent of the law being to enable the mortgagor and those claiming under him to prevent any foreclosure under the power of sale whenever an action to foreclose could not be successfully maintained for any reason, was held not to be unconstitutional as impairing the obligation of the contract when applied to mortgages existing at the time the statute went into effect, as it did not materially change the previously existing remedy to the detriment of the mortgagee. The court said: 'To the extent that the law in question indirectly renders the Statute of Limitations available as a bar to the exercise of the power, it grants the mortgagor a right which did not exist before; but it is too plain to require discussion that the obligation of the contract was not hereby impaired.'

"In Kreyling v. O'Reilly, 1902, 97 Mo. App. 384, 71 S.W. 372, it was held that a statute providing that no suit under a power of sale to foreclose any mortgage or deed of trust executed to secure any obligation to pay money or property shall be had or maintained to foreclose any such mortgage or deed of trust heretofore executed after the expiration of two years

after the passage of this act was held not unconstitutional as impairing the obligation of contracts upon the ground that it reduced the time within which mortgages executed before its passage could be foreclosed after the debts secured by them were barred. The court stated: 'Two years were allowed by the act within which deeds of trust and mortgages previously executed might be enforced by suit. That was a reasonable time, and puts the act outside of the constitutional inhibition against the enactment of state laws which impair the obligation of contracts.' "

And the Supreme Court of Arizona in Schwertner v. Provident Mut. Building-Loan Ass'n, 17 Ariz. 93, 148 P. 910, held: "Civ.Code 1913, par. 4113, providing that all mortgages, notwithstanding any provision contained therein, shall be foreclosed by action, is remedial and valid, though changing the remedy, so long as it does not impair the obligation of contracts."

The court quoted from Scott v. District Court, supra, to repel the contention that a statute to compel foreclosures in court was unconstitutional in that it impaired the terms of a contract as follows: " 'The power of sale was a mere remedy, subject to the control of the Legislature. The fact that the contract stipulated for this cumulative remedy did not make it any more sacred than any other remedy. It was merely one of the means by which the obligation

evidenced by the mortgage contract could be enforced. It was not the contract obligation which the Constitution forbids the impairment of'—citing authorities."

In State v. Circuit Court, 1933, 61 S.D. 356, 249 N.W. 631, it was decided:

"Statute, restricting conditions under which mortgage foreclosure by advertisement might be had, held not invalid as impairing obligation of pre-existing mortgage."

"Statute changing remedy does not impair obligation of contract so long as there remains sufficient remedy on contract which secures all substantial rights of parties."

As to statutes of limitations generally, it is said: "A statute of limitations will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right." Wood on Limitations, page 75.

█ It is recalled that under the doctrine of Baca v. Chavez, supra, and the usual power of sale contained in mortgages, no time limit was set for their exercise. Again at page 76 of Wood on Limitations, it is said: "It is now settled that the Legislature may prescribe a limitation for the bringing of suits *where none previously existed,* and may shorten the time within which suits to enforce existing causes of action may be commenced, if a reasonable time, under the circumstances, be given

by the new law for commencing suit before the bar takes effect." (Emphasis supplied.)

■■ Chapter 10, Laws 1927, is in the interest of uniformity and is a statute of repose and deemed by the legislature to be vital to the public welfare and did not offend the constitutional provision invoked by cross-appellants. Furthermore, as we have pointed out, Chapter 139, Laws 1929, prohibiting the exercise of powers of sale in mortgages intervened before the mortgage dated Nov. 22, 1929 was executed. If this be considered as a mortgage executed subsequent to the effective date of that act, the power of sale contained therein could not be exercised. If, on the other hand, the mortgage dated November 22, 1929 could be treated as a revival of the debt mentioned in the mortgage dated December 13, 1921, it could not serve to extend the time for enforcing the lien of the December 13, 1921 mortgage, because in the meantime, the remedy of foreclosure under power of sale had been withdrawn by the Legislature. The so-called renewal mortgage with respect to the remedy must be deemed to have been made subsequent to the time Chapter 139, Laws 1929, went into effect. Assuming that the later note and mortgage could have the effect to revive a debt barred by the statute of limitations, it could not give a remedy for the foreclosure of the security through power of sale in the face of a contrary public policy. In other words, if the No-

vember 22, 1929 mortgage was not in all respects a new mortgage, it must be regarded as at most, an attempt to vitalize a power of sale which time and circumstance had outlawed, and as this attempt was subsequent to the 1929 prohibitory act, it would be within the spirit of the prohibition. It is settled law that contracts opposed to public policy cannot be enforced. In the case at bar, the stipulation for the power of sale in the November 22, 1929 mortgage was made subject to the conditions imposed by existing law.

Other propositions unconvincingly urged by cross-appellants in support of their appeal have been considered, but we find it unnecessary to discuss them.

From all of the foregoing, we hold that the portion of the judgment appealed from by cross-appellants must be affirmed.

We come now to a consideration of the appeal of the plaintiff.

It will be remembered that the court denied relief to plaintiff in her ejectment suit because the defendants were "mortgagees in possession" and because plaintiff refused to pay the amount due on the senior mortgage.

Appellants' basic contentions briefly stated are:

1. Appellees did not urge in the district court that they were mortgagees in possession.

2. The senior mortgage relied upon by the appellees had been satisfied and released.

3. If the mortgage had not been satisfied and released, it was unenforceable because of the statutes of limitations and the laws of New Mexico, and therefore the mortgage lien was extinguished and the defendants could not be mortgagees in possession.

We hold that the decision of the trial court that the defendants were mortgagees in possession was within the issues presented during the trial, even though it may not have been presented by the original pleadings. We do not find that the appellant satisfactorily presented to the trial court the objection now raised to the trial court's authority to consider and determine the issue as to whether defendants were mortgagees in possession.

The claim of appellant that the mortgage and the mortgage debt had been satisfied, rests upon the circumstance that following the death of Dan C. Savage on January 1, 1940, his widow, the defendant Margaret Savage, found in his bank box a Satisfaction of Mortgage which purported on its face to satisfy and release the mortgage in favor of Mrs. J. C. Waugh, the original defendant in this action, and that such Satisfaction of Mortgage had been in the possession and control of Margaret Savage since that date. This instrument purported on its face to satisfy the mortgage bearing date the 22d of November, 1929, and was executed and acknowledged the 9th day of August, 1934.

As to this circumstance, the trial court found: "That nothing whatever was paid for said Satisfaction, but it was given at the time the maker thereof was in Roswell on a visit when it was contemplated by the parties that a new mortgage would be given in place of the one the Satisfaction purported to release, but the said transaction was never carried out; that is, no renewal was ever executed, and there was no consideration whatever for said release and it was never effective."

We have carefully considered the testimony and we conclude that this finding is supported by substantial evidence. The fact that the alleged satisfaction of mortgage was not recorded, whereas the mortgage it purported to satisfy was of record, notwithstanding that it is a statutory duty of the mortgagee when the debt is paid, to cause the satisfaction of mortgage to be entered of record, under penalty for failure to do so, 1941 Comp. 63-404, 63-405, and the interest which the mortgagor has in seeing that such recordation is accomplished if in fact the debt has been paid, lends support to the testimony given in the case.

The trial court made a finding of fact as follows: "That the said Mrs. J. C.

Waugh, through her said attorney took possession of said real estate above described on the 20th day of May, 1942, by the service of written notice upon the said Margaret Savage who had theretofore been looking after said real estate and the rentals thereof, copy of said notice being attached hereto and made a part hereof; that said Margaret Savage made no objection to the taking of possession of said premises by the said Mrs. J. C. Waugh; and that since said date the said Mrs. J. C. Waugh had possession of said premises until her death as above stated; and that since the appointment of the said Margaret Savage, administratrix of the estate of the said Mrs. J. C. Waugh, has charge and possession of said real estate since her said appointment and qualification as such administratrix, and that the said Margaret Savage, as such administratrix, for herself and the other heirs of the said Mrs. J. C. Waugh, deceased, is claiming possession by virtue of the sale and deed above mentioned." and made the following conclusion of law: "That having taken possession of said property as mortgagee prior to the foreclosure sale of plaintiff in this action as well as the sale under the 1921 mortgage, she is still actually a mortgagee in possession, and the defendant in this action is entitled to hold such possession until the amount due under such mortgage less any rents and profits received since she went into possession are paid or tendered to her by the plaintiff herein."

In Jones on Mortgages, 8th Ed., sec. 886, it is stated:

"A mortgagee can not be divested of possession until payment. Even where a mortgagor can not be divested of his possession without a foreclosure and sale, if the mortgagee, or any one standing in his place, has with the assent of the mortgagor obtained possession, neither the latter, nor any one claiming under him, can, by an action of ejectment or otherwise, recover possession until the debt is paid. * * *

"It is not essential to the status of a mortgagee in possession that possession should have been taken under the mortgage, nor with the consent of the mortgagor. It is enough if the possession be peaceably and legally acquired. The mortgagor's consent may be shown by circumstances.

"To be legal, the possession must have been taken in good faith, free from deceit, fraud, or wrong, and without violation of any contract relation with the mortgagor."

Again at sec. 1543, Jones says: "Although the right to proceed by action on the mortgage is barred, still, if the mortgagee can obtain rightful possession of the premises, he may retain them until the debt is paid." See also 37 Am.Jur., Mortgages,

§§ 794, 795, 796, 797 and 798, and Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329 and Annotation; and see Kaylor v. Kelsey, 91 Neb. 404, 136 N.W. 54, 40 L.R.A.,N.S., 839.

We gave recognition to the substance of these principles in Pershing v. Ward, 34 N.M. 298, 280 P. 254, 256, employing the expression "mortgagee in possession" and concluding: "Whenever the plaintiff wishes to redeem and resume possession, we assume he will find himself forced to offer to do equity by paying his debt to the defendant, whatever it may be instead of pleading the statute of limitations."

Appellant calls our attention to the statement found in Jones on Mortgages, 8th Ed., Sec. 1543, as an exception to the rule as follows: "But after the expiration of the time within which a mortgage may be enforced by foreclosure, the mere entering into possession by the mortgagee, without objection on the part of the mortgagor, does not restore the mortgage to efficacy, or entitle the mortgagee to the rights of a mortgagee in possession."

And to the same effect appellant quotes from Faxon v. All Persons, 166 Cal. 707, 137 P. 919, 924, L.R.A.1916B, 1209, italics supplied by appellant as follows: " * * * it appears clear to us that no such claim can properly be made upon an entry based upon proceedings for the enforcement of the lien instituted after the lien has been extinguished. The lien, together with all its incidents and appurtenances, being absolutely at an end, can no longer serve as a sufficient basis for the institution of any proceeding looking to its enforcement, or ·for the *conclusion that one entering under any such proceeding entered 'under color of the mortgage.'* * * * To confer any right of possession under the rule, the proceeding must at least have been based upon an *existing mortgage, not upon one that is dead and no longer a foundation for any enforceable right. We are satisfied that* the defendant *cannot* be held to be a *mortgagee in possession."*

This argument of appellant and his citations deserve our attention, to ascertain whether they are persuasive here.

Our research discloses that in Banning v. Sabin, 45 Minn. 431, 48 N.W. 8, cited by Jones to the text relied upon by appellant, the Minnesota Court reached its conclusion substantially as supported by Jones upon the theory that where the right to foreclose the mortgage had become barred by lapse of time, the mortgage was in effect extinguished. The court cited Archambau v. Green, 21 Minn. 520, in which the court said that the denial of all remedy is *practically* an extinguishment of the mortgage. That decision in turn cited Burwell v. Tullis, 12 Minn. 572, 12 Gil. 486, where the court said that: "When a remedy is denied for its (mortgage lien) en-

forcement it is at least practically gone," and that it would no longer be a cloud on the title of the landowner. The significance of these references will appear when we contrast the views there expressed with judicial and legislative understanding in New Mexico.

In the California case of Faxon v. All Persons, etc., supra, the court reached the same result as the Minnesota court and said that a party could not be held to be a "mortgagee in possession" within the rule, because a California statute provided: "A lien is extinguished by the lapse of the time within which, under the provisions of the Code of Civil Procedure, an action can be brought upon the principal obligation." Civ.Code, § 2911, and reached the conclusion that: "To confer any right of possession under the rule, the proceeding must at least have been based upon an existing mortgage, not upon one that is dead and no longer a foundation for any enforceable right."

▇▇▇ These views have a strong appeal to reason, but we may not adopt them in view of our decision in Baca v. Chavez, 32 N.M. 210, 252 P. 987. We there said that it had long been established here that the statute of limitations does not discharge the debt, but that it merely bars the remedy. We then proceeded to hold that the execution of power of sale in mortgages is not barred by limitation barring suit or action on the debt or security. Shortly thereafter, as we have seen, the 1927 Legislature nullified a portion of our decision in that case by asserting in Chapter 10, Laws '27, in effect that execution of power of sale in mortgages is barred by limitation barring suit or action on the debt or security.

Then the 1929 Legislature in Chapter 139 of the Laws of that session, passed a law prohibiting the sale of real property under the power of sale contained in mortgages. But neither enactment went so far as to declare that upon the lapse of time within which an action or suit upon the indebtedness secured by a mortgage could be commenced or when a power of sale contained in a mortgage could not be executed, that the lien of such mortgage is extinguished. We see no more reason to say that the mortgage lien is dead and extinguished and no longer a foundation for *any* enforceable right merely because it cannot be foreclosed by an action in court and cannot be foreclosed under a power of sale, than it would have been for us to have said in Baca v. Chavez that the effect of the bar of the statute of limitations is to extinguish the debt. Thus, being unable to conclude that the mortgage lien has been extinguished, even though unenforceable in a court action, or by exercise of the power of sale, we do not find the Minnesota and California cases cited supra persuasive.

It may be suggested in passing that the italicized portion of Chapter 34, Laws 1945, indicates a legislative understanding that a real estate mortgage even though unenforceable by foreclosure because barred by the statute of limitations is nevertheless a cloud on the title of the landowner, which is contrary to what is asserted arguendo by the Minnesota Court in Burwell v. Tullis, supra. Even this 1945 statute which of course is not controlling in the case at bar, does not declare that the liens therein mentioned are extinguished, but undertakes to declare that under some circumstances the owner or holder of such mortgage lien may be estopped from asserting any rights thereunder in a suit to quiet title against the holder of such mortgage lien.

 Appellant asserts that the defendants are not mortgagees in possession and urges that language in the mortgages to the effect that if the mortgagors do not pay the debt secured when due the mortgagees or their agent or attorney "are hereby authorized and empowered to take possession of said granted real estate and premises, and, after having given notice of the time and place of the sale * * * expose at public auction and sell * * * the said granted premises and real estate, etc." means that the mortgagees may only take possession for the purpose of making the sale, and since the sale was prohibited by our statutes, Ch. 10, Laws 1927, and Ch. 139, Laws 1929, the possession was not lawful. We cannot agree to this. Wiltsie on Mortgage Foreclosure, sec. 823, says: "Where there has been a breach of a condition authorizing foreclosure, possession of the property by the mortgagee or trustee is not necessary to authorize him to exercise the power of sale. The mortgagee's or trustee's possession of the property is not a condition precedent to the sale under a power in a mortgage or trust deed expressly giving him the right to take possession or providing that it shall be his duty on request or his right to take the property into his possession and sell it. Neither is it where the instrument provides that 'upon default of payment of the debt secured the trustee shall immediately take possession, and, having given notice, sell the land conveyed,' because such provisions are intended simply to confer upon the trustee the right of possession, and not to make such taking of possession a condition precedent to the exercise of the power of sale."

In Baca v. Chavez, supra, we held: "Power of sale construed as not requiring entry or demand for possession as condition precedent to giving notice of sale."

We take these pronouncements into consideration in construing the language of the mortgages heretofore quoted. Since possession is not necessary in order to exer-

cise a power of sale, under all of the circumstances of the case at bar, we are disposed to give the covenant for possession in the mortgagee a construction which would authorize the mortgagee to take possession for a purpose other than to exercise the power of sale, as well as for the latter purpose. And taking notice also of judicial holdings that the conjunctive "and" may be construed in the sense of "as well as" (see Vol. 3, Words and Phrases, Permanent Edition, p. 398), we are not inclined to the view advanced by appellant.

In addition to authorities heretofore cited, defining the term "mortgagee in possession" we select a definition from the late case Wilhite v. Yount-Lee Oil Co., Tex.Civ.App.1940, 140 S.W.2d 293, 296: "'A mortgagee in possession,' in fact or strictly speaking, is a mortgagee who takes possession of the mortgaged land by virtue of the contract between him and the mortgagor. 41 C.J. 217. Having thus entered, with the consent and in recognition of the rights of the mortgagor, his possession (in the absence of a repudiation of the relationship) is not hostile to the debtor; and therefore will not ripen into a limitation title. It is the right of a mortgagee in possession to retain possession until his debt is paid. Such character of right has in some states been extended to, and the term 'mortgagee in possession' is frequently used as a convenient phrase to describe the condition of one who has peaceably and lawfully acquired possession of the mortgaged premises under such circumstances as that equity will require payment of the debt a prerequisite to being dispossessed by the mortgagor, as where he purchases and enters under and in reliance upon an irregular or void foreclosure sale."

And in Ponca City Building & Loan Co. v. Graff, 189 Okl. 410, 117 P.2d 514, the Supreme Court of Oklahoma decided: "Where building and loan association foreclosed a mortgage, bought in the mortgaged realty at foreclosure sale, and took possession thereof, and the court thereafter set aside the proceedings and the sale thereunder, the possession of the building and loan association became that of a 'mortgagee in possession', and as such the building and loan association was entitled to remain in possession until payment of the debt, or until the case was concluded by a new judgment and foreclosure sale."

In the case at bar the record shows that the mortgagee, Mrs. J. C. Waugh, took possession of the mortgaged land by virtue of the contract between her and the mortgagors. The possession was peaceably and legally acquired; Mrs. Waugh, the mortgagee, by retaining possession through the abortive proceedings to sell the land under the power of sale foreclosure did not thereby lose her status as a mortgagee in possession.

Other contentions made by appellant we have carefully considered, but find unnecessary to discuss.

From all of the foregoing, we conclude that the judgment must be affirmed, and it is so ordered.

SADLER, C. J., and BRICE and LUJAN, JJ., concur.

HUDSPETH, J., did not participate.