**Edward SCHWARTZ**
**v.**
**UNITED STATES.**
No. 513–57.

United States Court of Claims.
March 2, 1960.

Whitaker, J., dissented in part.

William J. Woolston, Philadelphia, Pa., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Francis J. Steiner, Jr., Washington, D. C., was on the brief.

JONES, Chief Judge.

This is a suit for back pay of an employee during a period of suspension under the Security Act of August 26, 1950, 64 Stat. 476, 5 U.S.C.A. § 22–1 et seq., and Executive Order 10450, 5 U.S.C.A. § 631 note issued pursuant thereto. The defendant defends solely on the ground that plaintiff freely admits that he made no effort to secure other employment or to mitigate the damages in any way during the period of suspension.

Plaintiff held a nonsensitive position with the Post Office Department. He was suspended from duty on March 12, 1954, and was subsequently removed from his position effective September 15, 1954, under the terms of the Security Act of August 26, 1950. After the Supreme Court in Cole v. Young, 351 U.S. 536, 76 S.Ct. 861, 100 L.Ed. 1396, held that the Security Act did not apply to employees in nonsensitive positions plaintiff was reinstated on September 10, 1956. He is claiming back pay from March 12, 1954 (the date of his suspension), to September 10, 1956 (the date of his reinstatement).

At all times involved here, plaintiff had regular full-time employment with the Commonwealth of Pennsylvania, Department of Public Assistance, and later as a social worker for the City of Philadelphia. He held this position with the City of Philadelphia (at which he worked from 8:30 a. m. to 5:00 p. m., five days a week) at the time of his suspension from the Post Office Department and up until the time of his reinstatement.

Plaintiff accepted the additional position with the Post Office as an "indefinite substitute clerk" on February 1, 1953, at an hourly rate of $1.615 per hour for assignment when needed during the hours of 6:30 p. m. and 11:30 p. m. He continued at this rate until his suspension on March 12, 1954.

Plaintiff's position with the City of Philadelphia, which he held continuously from October 15, 1953, until September 1956, was not in any way affected by the suspension of his indefinite Post Office employment and is not involved in this case. Only the Post Office employment is at issue.

During the period between his suspension and his subsequent reinstatement plaintiff made no effort to secure employment to replace his former Post Office work. After his reinstatement by the Post Office Department, plaintiff worked only five weeks, voluntarily terminating his employment effective October 15, 1956.

The Security Act of August 26, 1950 provides that any person whose employment is suspended or terminated under the terms of the Act may in the discretion of the head of the agency concerned be reinstated or restored to duty. If

so reinstated or restored such person shall be allowed compensation for all or any part of such period of suspension or termination in an amount not to exceed the difference between the amount such person would normally have earned during the period of suspension or termination at the rate he was receiving on the date of such suspension or termination as appropriate and the *interim net earnings* of such person.

Plaintiff freely admits that he made no effort whatever to secure any other comparable employment during any part of the period between his suspension and subsequent reinstatement.

■ Not only the Security Act of 1950, but also the Lloyd-La Follette Act, 5 U.S.C.A. § 652 and other acts to which our attention has been called, contemplate a deduction for interim earnings.

Accordingly, the clearest implication that can possibly be drawn from the language used, is that it was contemplated that the claimant would make a reasonable effort to secure other employment and that the amount which the claimant earned, or with reasonable effort might have earned, be deducted from the total amount of compensation that would otherwise be paid under the statute. Confessedly, plaintiff made no effort to secure such employment.[1]

Plaintiff in his brief denies that under the terms of the relevant statutes there is any duty on the part of an illegally dismissed Federal employee to seek to obtain alternative employment. In oral argument, counsel for the plaintiff indicated that to seek other employment during the period, in view of the nature of the charges, might have jeopardized his regular employment with the City of Philadelphia, and that consequently there was no obligation on his part to seek other employment.

■ After plaintiff's suspension on March 12, 1954, he was given a hearing before the Security Hearing Board on July 8, 1954. The Board rendered its ad-

verse decision on August 31, 1954. Pursuant to this decision the Post Office removed plaintiff from his employment effective September 15, 1954. During this period when plaintiff was preparing for the hearing and while awaiting the Board's decision, we think the plaintiff had reasonable grounds for not making an effort to secure other extra employment. His time was undoubtedly taken up in the effort to secure favorable action by the Board. We think, therefore, that plaintiff had reasonable grounds for not seeking the added employment until the final adverse action removing him from his position. Therefore, plaintiff is entitled to recover for the period from March 12, 1954, through September 15, 1954.

■ To take the average earnings of the 12-month period immediately prior to his suspension is a reasonably accurate measurement of his rate of compensation on the date of his suspension. Plaintiff is entitled to recover at this rate for a period of six months and three days from the date of his suspension on March 12, 1954, to the final action pursuant to the decision of the Security Hearing Board.

■ After that final action there was no reasonable excuse for plaintiff's refusal to make any effort to secure other employment and thereby mitigate the damages resulting from the action taken by the Post Office Department.

In the case of Leiner v. United States, Ct.Cl., 181 F.Supp. 400, on which the plaintiff relies, the plaintiff earned more than $6,000 during the period of his suspension. To allow plaintiff to recover full compensation for the entire period would have the effect of reading out of the statute involved the provision for deducting the interim earnings. It would run counter to the whole stream of human experience and practically make a dead letter of the principle that has been woven deeply into human relationships and obligations under the law for hundreds of years, and would be con-

---

1. We are not therefore concerned with the question of which party has the burden of proof on the issue of mitigation of earnings.

trary to the letter and spirit of the congressional acts which permit recovery in connection with wrongful separation from the Federal service. Cf. Feldman v. United States, Ct.Cl., 181 F.Supp. 393.

Plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring in part and dissenting in part).

This is a suit for pay by a Government employee who was illegally discharged from his position as a postal clerk on March 12, 1954, and was subsequently reinstated on September 10, 1956. The plaintiff's position was a part-time night job by which he supplemented the salary he received for his regular employment with the city of Philadelphia and the state of Pennsylvania.

The sole question presented is the amount plaintiff is entitled to recover. Plaintiff admits that during the period of his illegal discharge he did not obtain, nor did he seek to obtain, additional night employment in order to mitigate his damages against the Government. In the light of this admission, the majority opinion has denied plaintiff's right to recover at all for the period after September 15, 1954. Recovery was allowed for the period March 12, 1954, to September 15, 1954, because during that period plaintiff was prosecuting his administrative appeal of his suspension and discharge, and, so, could not know, until a final decision on it, whether or not it would be necessary for him to seek other employment. The majority reasoned that during this period the plaintiff was under no obligation to obtain other employment and, therefore, recovery was allowed, but for this six months and three days' period only.

The majority, I believe, is in error in limiting recovery to this period. The failure to mitigate damages is not a legal defense to plaintiff's cause of action. The duty to mitigate damages concerns, not plaintiff's right of recovery, but the amount he may recover for defendant's wrong.

Generally stated, the rule is that damages which the plaintiff might have avoided with reasonable effort, without undue risk, expense, or humiliation, have not been caused by the defendant, or need not have been caused, and, therefore, are not to be charged against it. 5 Williston, Contracts, § 1353; Restatement, Contracts, § 336. As stated in comment (d) of section 336 of the Restatement of Contracts: "the law does not penalize his [e. g., a discharged employee] inaction; it merely does nothing to compensate him for the harm that a reasonable man in his place would have avoided." See also Restatement, Agency, § 455. This I believe is the correct statement of the rule and it should be applied by the court in this case.

For these reasons, I would remand the case to a trial commissioner to take testimony on whether plaintiff, without undue risk or expense, could have obtained other employment, and, if so, the amount plaintiff might reasonably have earned if he had done so. Since it is plaintiff who must prove the extent of his damage, I believe the burden of proof should be on him to show that he could not have obtained other employment. If other employment could have been obtained, the plaintiff should show the compensation he might reasonably have earned and this amount should be deducted from the salary he would have earned if he had not been illegally discharged.